UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKYK
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00734-GNS-CHL

UNITED STATES OF AMERICA                                                          PLAINTIFF

v.

CURTIS GORDON, JR.                                                                DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Dismiss (DN 14), Defendant's Motion for Leave to File Amended Counterclaim (DN 23), and Defendant's Motion for Leave to File Amended Response to Plaintiff's Motion to Dismiss (DN 26). These motions are ripe for adjudication. For the reasons that follow, Plaintiff's motion is **GRANTED** and Defendant's motions are **DENIED**.

**I.     BACKGROUND**

On October 22, 2010, a jury found Defendant Curtis Gordon, Jr. guilty of filing false income tax returns. (Pl.'s Mot. Dismiss Ex. 2, at 1-2, DN 14-4). In preparation for Gordon's sentencing phase of trial, his expert witness prepared two sets of demonstration tax returns to be utilized in Gordon's defense: one set demonstrating Gordon's "exaggerated" income amount the government attributed to Gordon and the other a "more realistic" income amount he asserted was the correct amount. (Def.'s Resp. Pl.'s Mot. Dismiss 1-2, DN 15; Answer & Countercl. ¶ 10, DN 8). Believing that he would be able to use that demonstrative evidence during his sentencing phase, Gordon presented the demonstration returns to the Court and the Assistant United States Attorney ("AUSA") prosecuting his case. (Def.'s Resp. Pl.'s Mot. Dismiss 3; Answer & Countercl. ¶ 12).

The Court ruled the demonstration returns inadmissible and returned the Court's copies to Gordon. (Def.'s Resp. Pl.'s Mot. Dismiss 3; Answer & Countercl. ¶ 12). Gordon claims that the AUSA's Office did not return its copies. (Def.'s Resp. Pl.'s Mot. Dismiss 3; Answer & Countercl. ¶ 12).

Gordon alleges that the set of demonstration returns prepared by his expert representing the government's "exaggerated" income attributed to Gordon somehow fell into the hands of an unknown third party, perhaps a government official, who fraudulently filed the demonstration returns under his name with the IRS. (Def.'s Resp. Pl.'s Mot. Dismiss 2). Gordon claims the IRS then used those demonstration returns to levy the tax assessments against Gordon that are the basis for the IRS's tax collection claim in this case. (Answer & Countercl. ¶ 32).

The United States filed this tax collection action against Gordon. (Compl. 1, DN 1). Gordon has asserted a counterclaim alleging unauthorized disclosure and inspection of tax return information under 26 U.S.C. § 7431(a). (Answer & Countercl. 6-8). The United States moved for dismissal of that counterclaim on March 26, 2019. (Pl.'s Mot. Dismiss 2, DN 14). Gordon responded to that motion on April 14, to which the United States replied on April 30. (Def.'s Resp. Pl.'s Mot. Dismiss 7; Pl.'s Reply Def.'s Resp. Pl.'s Mot. Dismiss 9, DN 18).

Gordon then subsequently moved for leave to file an amended counterclaim and an amended response to the United States's motion to dismiss on September 27. (Def.'s Mot. Leave File Am. Countercl. 1, DN 23; Def.'s Mot. Leave File Am. Resp. 1, DN 29). The United States responded on October 18. (Pl.'s Resp. Def.'s Mot. Leave File Am. Countercl. 1, DN 28; Pl.'s Resp. Def.'s Mot. Leave File Am. Resp. 1, DN 29). The Court granted Gordon leave to file a belated reply, and Gordon has since filed that reply. (Order, DN 30; Pl.'s Reply Mot. Leave File Am. Countercl., DN 31).

## II. JURISDICTION

To the extent this Court possesses jurisdiction over this matter, it is through federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## III. DISCUSSION

### A. Plaintiff's Motion to Dismiss

In its motion to dismiss, the United States proffers two arguments as to why Gordon's Section 7431(a) claims should be dismissed. First, the United States asserts that the claims are time barred by the two-year statute of limitations for bringing such claims set forth in Section 7431(d). Second, the United States contends that Section 7431(a) does not afford Gordon the relief he seeks. The United States also argues that Gordon's proposed amendments to his counterclaim and response to its motion to dismiss are futile and should not be allowed.

#### 1. *26 U.S.C. § 7431(a)*

Federal law prohibits the inspection or disclosure of any "return or return information" with respect to a taxpayer by an officer or employee of the United States. 26 U.S.C. § 7431(a). A "return" is "any tax or information return . . . *which is filed with the Secretary* by, on behalf of, or with respect to any person . . . ." 26 U.S.C. § 6103(b)(1) (emphasis added). The term "return information" refers to any information "*received by, recorded by, prepared by, furnished to, or collected by the Secretary* with respect to a return or with respect to the determination of the existence, or possible existence, of liability." *Id*. § 6103(b)(2)(A) (emphasis added). The portions of the statutes emphasized in the prior two sentences form the "pass through the IRS" rule followed by all courts who have ruled on this issue. *See, e.g.*, *Bankcroft Glob. Dev. v. United States*, 330 F. Supp. 3d 82, 97-99 (D.D.C. 2018); *Stokwitz v. United States*, 831 F.2d 893, 897 (9th Cir. 1987); *Lomont v. O'Neill*, 285 F.3d 9, 15 (D.C. Cir. 2002); *Ryan v. United States*, 74 F.3d 1161, 1163

(11th Cir. 1996). The United States moves for dismissal of Gordon's Section 7431(a) claim based on application of this rule pursuant to Fed. R. Civ. P. 12(b)(6).

To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When considering a defendant's motion to dismiss, the Court will "accept all the [plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the [plaintiff]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted).

The application of the "pass through the IRS" rule appears to be an issue of first impression in the Sixth Circuit. The "pass through the IRS" rule can be stated at follows: "Since section 6103 applies only to information filed with and disclosed by the IRS," only if a third party obtains a taxpayer's information "directly or indirectly from the IRS" does Section 7431(a)'s private right of action exist for a violation of Section 6103. *Stokwitz v. United States*, 831 F.2d 893, 897 (9th Cir. 1987); *see also Ryan v. United States*, 74 F.3d 1161, 1163 (11th Cir. 1996) ("Section 6103 of Title 26 protects only information filed with and disclosed by the IRS, not all information relating to any tax matter." (citing *Stokwitz*, 831 F.2d at 897)). Using this "pass through the IRS" rule, the Ninth Circuit in *Stokwitz* held that Section 7431(a)'s private right of action for a violation of Section 6103 did not apply to hold naval officials liable for seizing Stokwitz's tax returns from

him personally because that information was "not obtained directly or indirectly from the IRS . . . ." *Stokwitz*, 831 F.2d at 897. Until taxpayer information "passes through" the IRS, that information cannot constitute "return or return information" so as to afford a taxpayer a private right of action for the disclosure or inspection of that information.

Gordon here pleads his claim in two specific ways. First, Gordon alleges that the government incurred Section 7431(a) liability for whatever happened with the demonstration returns after being in the possession of the AUSA but before being in the possession of the IRS. (Def.'s Resp. Pl.'s Mot. Dismiss 2-3; Answer & Countercl. ¶¶ 30-34). But if those demonstration returns had not yet been in the possession of the IRS, those returns cannot constitute "return or return information," and any act occurring in conjunction with those demonstration returns committed by a third party, government official or not, does not give rise to Section 7431(a) liability. Although Gordon alleges that the AUSA and the IRS Special Agent were representatives of the IRS when prosecuting him, meaning that the demonstration returns were purportedly in the possession of the IRS when in the hands of those individuals, "information collected by the United States Attorney's Office, even with the assistance of an IRS Special Agent, is not information belonging to the Secretary of the Treasury—it is within the custody of the Attorney General or the Department of Justice." *Ryan*, 74 F.3d at 1163. It is only the purported subsequent inspections and disclosures of the demonstration returns occurring after the information was or had been in the possession of the IRS that potentially give rise to liability owed under Section 7431(a), not inspections and disclosures of information that has never been in the possession of the IRS. Gordon's claim in this regard fails.

Gordon secondly asserts his Section 7431(a) claim by alleging that the IRS improperly used or disclosed the demonstration returns in conjunction with collection efforts. Although the

Sixth Circuit has never dealt with this issue, courts appear to be in uniform agreement that a suit for unlawful disclosure or inspection occurring in connection with tax collection activity may only be maintained under 26 U.S.C. § 7433, not Section 7431. *See, e.g.*, *Shwarz v. United States*, 234 F.3d 428, 432-33 (9th Cir. 2000) (explaining that both the plain language and legislative history of Section 7433 indicate that its exclusivity provision bars a Section 7431 claim where the alleged disclosures occurred in the context of tax collection activity); *Link v. United States*, 539 F. Supp. 2d 360, 362 (D.D.C. 2008) (noting that cases brought in the District of the District of Columbia where plaintiffs sought damages under Section 7431 for unlawful disclosure in connection with tax collection activity "have, without exception, been dismissed pursuant to the exclusivity provision of [Section] 7433"); *see also* Fed. Tax Coordinator ¶ V-5802 (2d Oct. 2019 update) (collecting cases holding the same). Because Gordon brought his claim for a violation of Section 6103 pursuant to Section 7431(a) and did not assert any claim pursuant to Section 7433, Gordon's counterclaim in this regard fails. (Answer & Countercl. ¶¶ 29, 36).

Outside of these two specifically asserted claims, Gordon pleads no other "factual matter, accepted as true, to state a claim to relief that is plausible on its face." The only other allegation Gordon proffers with respect to his counterclaim is that other violations of Sections 6103 and 7431(a) have occurred that are not yet known to Gordon that could be revealed through the discovery process. This claim, however, is a "naked assertion devoid of further factual enhancement" that warrants dismissal. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted). Proper application of the *Twombly* Fed. R. Civ. P. 12(b)(6) standard prevents "wholly conclusory statement[s] of claim[s] [from] surviv[ing] a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 550 U.S. at 561. Gordon's speculative assertion that

discovery will reveal that other violations of Sections 6103 and 7431(a) occurred cannot be accepted here without running afoul of *Twombly*'s instruction "to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence to support [] [the] claim." *Id*. at 559 (internal quotation marks omitted) (citations omitted). Gordon has asserted no "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Id*. at 555 (citations omitted); *see also Polito v. Skamania Cty.*, No. C15-5542-RBL, 2016 WL 454844, at *2 (W.D. Wash. Feb. 5, 2016) ("Polito's claim that he needs discovery to uncover facts to support his claims is also flawed. Discovery is not [a] vehicle for stating a claim; it is a tool for obtaining evidence. Indeed, Rule 12(b)(6) is meant to preclude just these types of speculative and implausible claims, early in the litigation, to not unfairly burden the defendant with discovery.")

Accordingly, Gordon's counterclaim will be dismissed.

### 2. *Statute of Limitations*

The United States's other ground for dismissal is Gordon's purported failure to bring his Section 7431(a) claims within the applicable statute of limitations. Section 7431(d) imposes a two-year timeframe from the date of discovery by the plaintiff of the unauthorized inspection or disclosure to file an action under Section 7431(a) for violation of Section 6103. This time period begins to run when the plaintiff "knew or reasonably should have known of the government's allegedly unauthorized disclosures." *Aloe Vera*, 699 F.3d at 1160.

At the outset, there is an issue regarding the appropriate standard of review in addressing the government's motion to dismiss. There is a split among courts regarding whether the two-year

7

time limit[1] is considered jurisdictional, to which the Fed. R. Civ. P. 12(b)(1) standard would apply, or not, to which the Fed. R. Civ. P. 12(b)(6) standard would apply. *Compare Aloe Vera of Am., Inc. v. United States (Aloe Vera I)*, 580 F.3d 867, 871-72 (9th Cir. 2009) (holding the two-year time limit to be jurisdictional), *Gandy v. United States*, 234 F.3d 281, 283 (5th Cir. 2000) (holding the two-year time limit to be jurisdictional), *with Bancroft*, 330 F. Supp. 3d at 95 (holding the two-year time limit to not be jurisdictional). Only the Ninth and Fifth Circuits and the District of the District of Columbia have addressed this issue. *Bancroft*, 330 F. Supp. 3d at 92 ("Neither the Supreme Court nor the D.C. Circuit has clarified under which umbrella the statute of limitations in § 7431 stands. Indeed, only two Circuits have addressed this issue at all."). The Court, as a matter of first impression in the Sixth Circuit, need not decide on the appropriate standard to apply here, however, because the United States's argument fails under application of both standards—the United States is unable to establish that Gordon "knew or reasonably should have known of the government's unauthorized disclosures" before the expiration of the statute of limitations.

The United States attempts to pinpoint the time for the start of the running of the statute of limitations clock somewhere between 2014 and 2015, meaning that the latest Gordon could bring his Section 7431(a) claims for violations of Section 6103 was sometime in 2017. (Pl.'s Mem. Supp. Mot. Dismiss 6, DN 14-1). Gordon did not assert any such claims until January 8, 2019. (Answer & Countercl. 9). This pinpointing stems from Gordon's assertion that he first became aware of the fact that the "fraudulent" demonstration returns were in the possession of the IRS on November 2, 2015. (Pl.'s Mot. Dismiss Ex. 1, DN 14-3; Pl.'s Mot. Dismiss Ex. 2, at 3, DN 14-4).

---

[1] The full text of Section 7431(d) is as follows: "**Period for bringing action.**—Notwithstanding any other provision of law, an action to enforce any liability created under this section may be brought, without regard to the amount in controversy, at any time within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure." (emphasis in original).

However, simply because Gordon became aware of the existence of the demonstration returns in the hands of the IRS does not assuredly mean that he knew or should have known of any unauthorized disclosures or inspections under Section 6103 at that time.

At this stage in the litigation, it cannot be determined when Gordon knew or should have known about any unauthorized disclosure or inspection. As previously mentioned, the only two specific allegations Gordon has made regarding violations of this provision are: (1) the turning over of his returns by a government employee to the IRS; and (2) the unauthorized disclosures and inspections taking place in conjunction with collection efforts by the IRS. The first allegation, however, does not even constitute an unauthorized inspection or disclosure because, as previously found, the information inspected and disclosed at that time did not constitute "return or return information." As for the second allegation, Gordon cannot maintain an action under Section 7431(a) for such acts because Section 7433 provides the exclusive remedy.

Gordon's motion for leave to file an amended response to the United States's motion to dismiss his counterclaim and his proposed response deal solely with this statute of limitations argument and nothing else. Gordon asks for leave to amend his response to the government's motion to dismiss under Fed. R. Civ. P. 15(a)(2). Courts are in almost unanimous agreement, however, that Fed. R. Civ. P. 15(a)(2) is not the correct rule under which to request relief to amend a response to a motion. *See, e.g.*, 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1475 (3d ed. Aug. 2019 update) (collecting cases and acknowledging that the outlier case of *Carter v. American Bus Lines, Inc.*, 22 F.R.D. 323 (D. Neb. 1958) "should not be relied on as supporting the widespread use of Rule 15(a) for the amendment of motions."). Rather, judicial discretion governs the ability of parties to amend responses to motions. *See* Wright & Miller, *supra*, § 1194 (citing *Espinoza v. Galardi S. Enters., Inc.*, No. 14-21244-CIV, 2017 WL 4553451,

at *5 (S.D. Fla. Oc. 12, 2017). "When determining whether to permit an amendment to a party's filing, the Court considers: (1) whether the adverse party will be prejudiced by the amendment; (2) whether the 'amendment is necessary to [e]nsure that the case is adjudicated fairly and justly;' and (3) whether the amendment will help resolve the litigation at an early date." *Espinoza*, 2017 WL 4553451 at *5 (citing *Factory Direct Tires, Inc. v. Cooper Tire & Rubber Co.*, No. 3:11CV255/RV/EMT, 2012 WL 2873232, at *2 (N.D. Fla. June 13, 2012)).

Gordon's proposed amendment to his response is entirely futile, as it adds nothing to address the Court's grounds for dismissal—that the "pass through the IRS" rule and the exclusive remedy provision of Section 7433 preclude his counterclaim. Gordon's proposed amendment is not "necessary to [e]nsure that the case is adjudicated fairly and justly," nor will it "help resolve the litigation at an early date." *Id*. Gordon has also offered absolutely no explanation as to why his earlier response to the United States' motion to dismiss did not include the information he wishes to now include. *See Repetitive Stress Injury Litig.*, 165 F.R.D. 367, 374 (E.D.N.Y. 1996) (noting the when denying plaintiffs' motion to supplement, "the plaintiffs . . . do not suggest that the materials that they now seek to submit could not, by due diligence, have been obtained earlier. Nor is any claim of excusable neglect advanced in support of the relief requested."); *German Am. Capital Corp. v. Morehouse*, No. GJH-13-296, 2017 WL 3411941, at *3 (D. Md. Aug. 4, 2017) (denying a motion to supplement after the moving party failed to "indicate he exercised due diligence" in discovering the information he now wished to add). Finally, courts generally decline to allow amendments to motions that are fully briefed and ripe for adjudication, like the United States' motion to dismiss in this case. *See, e.g.*, *Factory Direct Tires*, 2012 WL 2873232, at *1 ("In theory, a motion may be amended at any time before the judge has acted upon the request, *although it is particularly inappropriate after briefs have been interposed by the opposing*

*parties* . . . ." (emphasis in original) (quoting 5 Wright & Miller, *supra*, § 1194)). The Court therefore declines Gordon's motion for leave to amend his response to the United States' motion to dismiss.[2]

### B. Defendant's Leave to Amend Counterclaim

Finally, Gordon seeks to amend his counterclaim pursuant to Fed. R. Civ. P. 15(a)(2), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." A district court, however, may deny a motion to amend where there is "undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility of amendment . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A proposed amendment . . . is futile if it would not survive a motion to dismiss." *Dearborn Fed. Sav. Bank v. F.D.I.C.*, No. 13-10833, 2014 WL 320950, at *5 (E.D. Mich. Jan. 29, 2014) (rejecting proposed amendments because the "Court lack[ed] subject matter jurisdiction to hear Plaintiff's [proposed added] claims . . . ." (citing *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005))). Like with his motion for leave to file an amended response, Gordon offers no argument whatsoever in an attempt to persuade the Court to exercise its discretion and allow him to amend his counterclaim.

In his proposed amendment, Gordon requests three specific forms of relief: (1) for a finding that the demonstration returns constitute forged instruments, which void any taxes, penalties, and interest owed based on those returns; (2) for a finding that the IRS failed to provide Gordon "Due Process" and that a credit to his overall tax liability should be applied; and (3) that

---

[2] The United States requests that Gordon's tendered proposed amended response be stricken from the record because Gordon filed it as a separate document and not in conjunction with his motion. (Def.'s Resp. Pl.'s Mot. Leave Am. Resp. 7, DN 29). The Court, however, finds no reason to strike Gordon's tendered proposed amended response from the record, since its retention provides a more complete record.

the I.R.S. must refund Gordon the full amount of taxes, penalties, and interest it collected from him between the tax years of 2002 through 2009. (Def.'s Proposed Am. Countercl. 5-6, DN 23-1). To the extent Gordon pleads any of these forms of relief as "claims,"[3] the United States argues they are futile because the Court lacks jurisdiction to hear such claims.

Gordon does not articulate how he could maintain his first articulated claim against application of the Anti-Injunction Act, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person" and divests courts of subject-matter jurisdiction over such claims. 26 U.S.C. § 7421(a); *CIC Servs, LLC v. Internal Revenue Serv.*, 925 F.3d 247, 250 (6th Cir. 2019). In order to survive dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), Gordon bears the burden of proving subject matter jurisdiction. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).

Gordon, however, makes no effort to explain how his claim to void amounts he owes to the IRS survives application of the Anti-Injunction Act through either its nonapplication or through an exception to its application. *See CIC Servs.*, 925 F.3d at 250-51. Gordon's first claim for relief asks the Court to void all taxes, penalties, and interest owed between tax years 2002 through 2009, which is a request for the Court to directly restrain the IRS from collecting on taxes owed to it and in direct conflict with the Anti-Injunction Act. *See Agility Network Servs., Inc. v. United States*, 848 F.3d 790, 796 (6th Cir. 2017) (taxpayers asking for a TRO "preventing any further collection

---

[3] The first two "claims" Gordon asserts are seemingly just a reiteration of his original "Defenses" to the United States' claim. (Answer & Counterclaim 5-6); *see generally* Fed. R. Civ. P. 8(c)(2) ("If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.").

action" is "clearly a request for an injunction inhibiting the government collecting on the taxpayers' tax debt, which § 7421(a) prohibits"). As such, Gordon's "claim" is this regard is futile.

Gordon's second claim for relief also falls prey to the Anti-Injunction Act. Gordon seeks a "credit" to be applied to his overall tax liability, which also conflicts with the Anti-Injunction Act. If the IRS has not yet collected on the amount that Gordon seeks to credit, Gordon's request for a credit is a request for a restraint on the collection of a tax he owes, a request that directly conflicts with the Anti-Injunction Act. By seeking to have a credit applied, Gordon is attempting to restrain the government from collecting on the full tax owed. Gordon's second claim, like his first claim, would have to be dismissed pursuant to the Anti-Injunction Act, meaning his proposed amended counterclaim in this regard is futile.

Gordon's second claim could also be interpreted as a "refund claim," like his third and final claim, if he has already paid the IRS's assessments attributed to him and seeks to recoup that amount. Gordon's third claim is for a finding that the IRS must refund Gordon the full amount of taxes, penalties, and interest it collected from him between the tax years of 2002 through 2009 based on the demonstration returns. (Def.'s Proposed Am. Countercl. 6).

Under the Anti-Injunction Act, "[n]o suit or proceeding shall be maintained in any court for the recovery of an internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary . . . ." 26 U.S.C. § 7422(a). The Internal Revenue Code provides that a "[c]laim for credit or refund of an overpayment of any tax imposed . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later . . . ." 26 U.S.C. 6511(a). According

13

to a declaration submitted by an IRS representative and a ledger evidencing Gordon's tax liability payments, for the years 2002 and 2006 through 2009, the latest tax return filed by Gordon was January 27, 2011, and the latest tax liability payment made by Gordon was August 4, 2014.[4] (Morris Decl. ¶¶ 7-8, DN 28-1; Pl.'s Mot. Dismiss Ex. 1, at 1, 3-11, DN 28-2). Consequently for these years Gordon had until August 4, 2016, to file an administrative refund claim with the IRS, i.e., the later of three years from the time the latest return was filed or two years from the time the latest tax was paid. Gordon did not file his refund claim until February 13, 2017.[5] (Pl.'s Mot. Dismiss Ex. 2, at 6, DN 28-3). "[U]nless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund . . . may not be maintained in any court." *United States v. Dalm*, 494 U.S. 596, 602 (1990) (internal citations omitted) (citing *United States v. Kales*, 314 U.S. 186, 193 (1941)). As such, Gordon's purported refund claim for the years 2002 and 2006 through 2009 is time barred, meaning his requested counterclaim amendment is futile.[6]

As for tax years 2003 through 2005, Gordon has not paid the assessments the IRS states he owes so he cannot maintain a "refund" claim for these years—Gordon cannot seek a "refund" on amounts he has not yet paid. (Compl. ¶¶ 5-13). In any event, "[28 U.S.C. §] 1346, correctly

---

[4] The Sixth Circuit has clarified that "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)).

[5] Gordon argues that he filed a "Form 12153 Request for a Collection Due Process of Equivalent Hearing on August 7, 2014, for tax years 2006 through 2009[,]" which should suffice as his "refund claim." A sister court, however, dealt with this exact issue, explaining, "A Collection Due Process Hearing is not equivalent to a claim for refund. While a Collection Due Process hearing may have challenged the original levy, this Court is without jurisdiction to allow a [suit] for refund to continue without Defendant having first filed a claim for refund." *United States v. Appelbaum*, 47 F. Supp. 3d 370, 377 n.3 (W.D.N.C. 2014).

[6] A motion to dismiss is generally an "inappropriate vehicle" for dismissing on statute of limitation grounds, *unless* "the allegations in the complaint affirmatively show that the claim is time-barred." *Lutz v. Chesapeake Appalachia*, LLC., 717 F.3d 459, 464 (6th Cir. 2013) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)).

14

construed, requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court." *Flora v. United States*, 362 U.S. 145, 176 (1960). As Gordon has obviously not paid the full amount of the assessments the IRS asserts against him in this tax collection action, Gordon's purported refund claims for tax years 2003 through 2005 are futile as well.

Apart from Gordon's claims for relief, his citations to three statutes must be addressed. In his tendered amended counterclaim, Gordon makes numerous references to 26 U.S.C. § 7803(a)(3); however, that provision "directs the Commissioner of Internal Revenue to ensure that IRS employees are familiar with taxpayer rights, but does not contain an individual cause of action or a waiver of sovereign immunity." *Dockens v. United States*, No. 1-15-CV-2761-SCJ, 2018 WL 3949707, at *2 (N.D. Ga. Jan. 18, 2018). Further, in his belated reply to the United States's response to his motion for leave to amend his counterclaim, Gordon recites the language of Sections 7432(a) and 7433(a). (Def.'s Reply Mot. Leave File Am. Countercl. 2, DN 31). Gordon's "brief mentions of [Sections 7432(a) and 7433(a)] hardly put the Government on notice that the taxpayers have sued for damages" based on these statutes. *Agility Network*, 848 F.3d at 794. Furthermore, Gordon "merely observes that th[ese] statute[s] exist[] but does not explain how or why [he] would be entitled to relief pursuant to th[ose] statute[s]." *Fairfield, AL, City of v. United States*, No. 2:17-CV-1064-KOB, 2018 WL 2445686, at *7 (N.D. Ala. May 31, 2018). Neither does Gordon attempt to tie these statutes together to his factual allegations or with each other. As such, "the court has no allegation or cause of action to address." *Id*.

Finally, Gordon makes no effort in his proposed amended counterclaim to cure the deficiencies associated with his Section 7431(a) claims, deficiencies resulting in the dismissal of

those claims. Because Gordon's entire proposed amended counterclaim is futile, the Court will deny his motion for leave to amend his counterclaim.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss (DN 14) is **GRANTED**. Defendant's Motion for Leave to File Amended Counterclaim (DN 23) and Defendant's Motion for Leave to File Amended Response to Plaintiff's Motion to Dismiss (DN 26) are **DENIED**. Defendant's Counterclaim (DN 8) is **DISMISSED WITHOUT PREJUDICE**.

Greg N. Stivers, Chief Judge
United States District Court

December 5, 2019

cc: counsel of record