UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00734-GNS-CHL

UNITED STATES OF AMERICA                                                                 PLAINTIFF

v.

CURTIS GORDON, JR.                                                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment (DN 37). The motion is ripe for adjudication. For the reasons outlined below, the motion is **GRANTED**.

### I.   BACKGROUND

Plaintiff United States of America ("Plaintiff") filed this action seeking to impose federal income tax and civil fraud penalties against Defendant Curtis Gordon, Jr. ("Defendant") for the 2003, 2004, and 2005 tax years. (Am. Compl. ¶¶ 5-13, DN 21). Defendant was previously indicted for and convicted of willfully filing false income tax returns for the relevant tax years in violation of 26 U.S.C. § 7206(1). (Second Superseding Indictment, DN 37-4; Am. J., DN 37-3).

Plaintiff contends that Defendant's tax liability consists of both underlying tax liabilities and deficiency liabilities. (Pl.'s Mem. Supp. Mot. Summ. J. 1, DN 37-1). Underlying tax liability is the amount that the IRS assesses that the taxpayer owes based on the taxpayer's return. *Callahan v. Comm'r*, 130 T.C. 44, 50 (2008) (citations omitted). Before underlying tax liabilities established by an IRS assessment can be collected, "the IRS must notify the taxpayer of (1) the IRS' intent to levy the [taxpayer's property], [and] (2) the taxpayer's right to a collection due process hearing" to challenge the underlying tax liability. *Cropper v. Comm'r*, 826 F.3d 1280, 1282 (10th Cir. 2016); *see also* 26 U.S.C. §§ 6630(a)(1), 6331(d)(1). Deficiency

liability, on the other hand, is established when the taxpayer owes more than the amount shown as due on his or her tax return. 26 U.S.C. § 6211(a). For a deficiency liability, the IRS must send the taxpayer a notice of deficiency at which point the taxpayer can challenge the claimed deficiency in Tax Court. *Gray v. Comm'r*, 140 T.C. 163, 170 (2013); 26 U.S.C. § 2611(a).

Defendant's underlying tax liability for 2003, 2004, and 2005 was assessed by the IRS in 2007 and 2011. (Pl.'s Mot. Summ. J. Ex. 9, at 2-3, 13-14, DN 37-11 [hereinafter Form 4340s]). Defendant contends that both the 2007 and the 2011 assessments were based on inaccurate tax returns. (Def.'s Resp. Pl.'s Mot. Summ. J. 4-5, 7, DN 57). For the 2007 assessment, Defendant asserts that an indirect method was used to calculate his tax liability because his records for the years at issue were inaccessible due to the criminal investigation against him. (Def.'s Resp. Pl.'s Mot. Summ. J. 4-5). For the 2011 assessment, Defendant states that he did not file the return used for the assessment. (Def.'s Resp. Pl.'s Mot. Summ. J. 7). Furthermore, Defendant contends he did not receive notice of the underlying tax liabilities from the 2007 assessment until August 29, 2011. (Form 4340s, at 3, 13, 22). In fact, the IRS' own records reflect that the notice was "reversed" and then "rescinded." (Form 4340s, at 4, 14, 22). Defendant claims the IRS never notified him of the 2011 assessment at all. (Def.'s Resp. Pl.'s Mot. Summ. J. 8).

On December 13, 2013, Defendant received a Notice of Deficiency ("Notice of Deficiency") informing him he owed back taxes and civil fraud penalties totaling $77,236.25 for the 2003, 2004, and 2005 tax years. (Pl.'s Mot. Summ. J. Ex. 7, DN 37-9 [hereinafter Notice of Deficiency]). The Notice of Deficiency stated that if Defendant wanted to challenge this determination he had 90 days to file a petition in the U.S. Tax Court. (Notice of Deficiency 1). The Notice of Deficiency also referenced the "total underpayment" owed by Defendant from the

2007 and 2011 assessments—i.e., the original "underlying liability" for 2003, 2004, and 2005. (Notice Deficiency 9).

Defendant then filed suit in U.S. Tax Court in 2014. (Pl.'s Mot. Summ. J. Ex. 5, at 1-2, DN 37-7 [hereinafter Tax Ct. Order & Decision]). The issue in the Tax Court action was whether Defendant owed the deficiency liabilities and civil penalties described in the Notice of Deficiency for tax years 2003, 2004, and 2005. (Tax Ct. Order & Decision 1-2). Defendant also contended before the Tax Court that the 2011 assessment was based on tax returns he had not filed. (Pl.'s Mem. Supp. Mot. Summ. J. 3). Prior to trial, however, in November 2015, the parties signed a stipulation ("Stipulation") "represent[ing] the agreement as to all adjustments in the statutory notice of deficiency dated December 13, 2013, for petitioner's 2003 through 2005 tax years." (Pl.'s Mot. Summ. J. Ex. 8, at 1-3, DN 37-8 [hereinafter Stipulation]). The Stipulation further stated that "the parties agree that this stipulation resolves all issues in this case with respect to the petitioner's 2003 through 2005 tax years." (Stipulation 3).

The Stipulation not only provided the agreed-upon deficiency amount was correct, but it also reduced Defendant's underlying tax liability. (Stipulation 1-2). Specifically, the parties agreed to adjustments for a $10,000 mortgage interest deduction for 2004, a $10,000 decrease in reported gross receipts for 2005, and a $59,090 increase in a mortgage expense deduction for 2005. (Stipulation 1-2). Under the Stipulation, Defendant owed a deficiency of $50 and civil fraud penalties totaling $58,073.25. (Tax Ct. Order & Decision 2). On April 11, 2016, the Tax Court entered the corresponding judgment which described the Stipulation as "resolv[ing] all issues in this case with respect to [Defendant's] 2003 through 2005 tax years." (Tax Ct. Order & Decision 1).

In 2019, the IRS issued a new assessment based on the 2007 assessment, the 2011 assessment, and the adjustments agreed upon in the Stipulation. (Form 4340s, at 1-28). The changes in the Stipulation led to a reduction of $1,163 to the original 2004 underlying tax liability and a $24,321 reduction for 2005. (Stipulation 1-2; Form 4340s, at 17, 26).

Plaintiff subsequently filed this action and has moved for summary judgment. (Pl.'s Mot. Summ. J., DN 37). The motion is ripe for decision.

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon 28 U.S.C. §§ 1331, 1340, 1345, and 26 U.S.C. § 7402.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [of showing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim. *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of

fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Res Judicata

Plaintiff asserts that Defendant is precluded from challenging his tax liability due to the doctrine of res judicata. (Pl.'s Mem. Supp. Mot. Summ. J. 6). Defendant, however, contends that Plaintiff is precluded from relying on res judicata because it was not raised in a pleading and that the doctrine is inapplicable. (Def.'s Resp. Pl.'s Mot. Summ. J. 15-22).

#### 1. *Waiver*

The doctrine of res judicata provides that a party may not bring a claim when: (i) there is a prior final decision on the merits by a court with jurisdiction; (ii) the case is between the same parties; (iii) the issue was or should have been litigated in the prior action; and (iv) an identity of the causes of the action. *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1229 (6th Cir. 1981). In the context of tax litigation, "if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year." *Golden v. Comm'r*, 548 F.3d 487, 495 (6th Cir. 2008) (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948)).

The Sixth Circuit has specifically held that res judicata can be raised for the first time in a summary judgment motion.  In *Raub v. Moon Lake Property Owners' Association*, 718 F. App'x 407 (6th 2018), the Sixth Circuit concluded that the defendants had not waived their res judicata argument by asserting res judicata in a summary judgment motion even though they had failed to raise the doctrine in an earlier motion to dismiss.  *Id.* at 408.  Similarly, in *Ballatore v. Commissioner of Social Security*, No. 11-CV-15335, 2014 WL 2765269 (E.D. Mich. June 18, 2014), a sister court specifically found that the plaintiff had properly raised the issue of res judicata in a motion for summary judgment.  *Id*. at *4.

The cases Defendant cites from other circuits are distinguishable from the case at hand.  For example, in *Herzburn v. Milwaukee County*, 504 F.2d 1189 (7th Cir. 1974), the Seventh Circuit found that the plaintiffs had waived their right to claim res judicata when they had not raised it in any pleading or motion.  *Id*. at 1196.  Similarly, in *Harvey by Blakenbaker v. United Transportation Union*, 878 F.2d 1235 (10th Cir. 1989), the Tenth Circuit held that the defendants had waived res judicata when they asserted it for the first time after the trial.  *Id*. at 1243.  Both cases are inapplicable to the present case where res judicata was first raised before trial in Plaintiff's motion for summary judgment.

Therefore, Plaintiff has not waived its res judicata argument by asserting it for the first time in its dispositive motion.

    **2.**    *Merits*

Res judicata is applicable in this case and prevents Defendant from challenging his underlying tax liability because:  (i) the Tax Court had jurisdiction to determine the underlying tax liability; (ii) the determination of the deficiency amount and the underling tax liability

6

constitute the same cause of action; and (iii) Defendant had a full and fair opportunity to litigate his underlying tax liability.

### a. The Tax Court had jurisdiction to determine the underlying tax liability.

Defendant argues that the Tax Court did not have jurisdiction to determine his underlying tax liability and therefore res judicata does not prevent him from challenging the underlying liability now. (Def.'s Resp. Pl.'s Mot. Summ. J. 17). Res judicata is inapplicable when a party against whom it is asserted was "unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction." *Prewett v. Weems*, 749 F.3d 454, 462 (6th Cir. 2014) (quoting Restatement (Second) of Judgments § 26(1)(C) (1982)). It is Defendant's position that the Tax Court only had jurisdiction because of the Notice of Deficiency and could only adjudicate the existence or extent of a liability described "in the [deficiency] notice." (Def.'s Resp. Pl.'s Mot. Summ. J. 18); 26 U.S.C. § 6213(a). Defendant claims that because the Notice of Deficiency does not reference the underlying liabilities, the Tax Court did not have jurisdiction to determine the underlying liability amount. (Def.'s Resp. Pl.'s Mot. Summ. J. 17; Notice of Deficiency 9). Instead, Defendant argues that the Tax Court had jurisdiction only to determine the deficiency amount and the civil penalties.

In federal tax litigation "one's total income tax liability for each taxable year constitutes a single unified cause of action, regardless of the variety of contested issues and points that may bear on the final computation." *Finley v. United States*, 612 F.2d 166, 170 (5th Cir. 1980) (citation omitted). The deficiency amount is calculated from the taxpayer's actual underlying liability and therefore it is necessary to properly determine the taxpayer's underlying liability to determine the deficiency. As the Tax Court has noted, "[t]here can be no question that when the

7

taxpayer petitioned the Tax Court to redetermine the asserted deficiency, the Tax Court acquired jurisdiction to decide the entire gamut of possible issues that controlled the determination of the amount of tax liability for the year in question." *Winter v. Comm'r*, 135 T.C. 238, 244 (2010) (quoting *Russell v. United States*, 592 F.2d 1069, 1072 (9th Cir. 1979)).

In arguing that the Tax Court lacked jurisdiction to determine the underlying liability, Defendant relies on *United States v. Beane*, 841 F.3d 1273 (11th Cir. 2016). *Beane* is distinguishable because it involved an attempt to use res judicata based on a prior Tax Court case determining a deficiency amount to prevent a party from protesting subsequent statutory interest calculations. *Id.* at 1283. *Beane* points out that the Tax Court's "jurisdiction to redetermine a deficiency in tax does not extend to statutory interest . . . ." *Id*. at 1284 (internal quotation marks omitted) (citation omitted). The difference is that the Tax Court must determine the underlying liability in order to establish any deficiency, so measuring a deficiency necessarily encompasses the underlying tax liability. The same logic does not apply to statutory interest which would not be calculated until after a deficiency amount was determined.

Therefore, Defendant's contention that the Tax Court lacked jurisdiction to determine the underlying tax liability in the 2014 case is rejected.

> **b. The determination of the deficiency amount and the underlying tax liability constitute the same cause of action.**

Defendant asserts that res judicata should not apply because the different rights associated with underlying tax liabilities versus deficiency liabilities makes this a separate cause of action. (Def.'s Resp. Pl.'s Mot. Summ. J. 20). Defendant argues that underlying tax liabilities must be challenged at a due process hearing and that the 2014 Tax Court case was limited to addressing the deficiency and civil penalty amounts. (Def.'s Resp. Pl.'s Mot. Summ. J. 20). The Tax Court, however, has specifically held that "a taxpayer may contest at a [collection due

process] hearing the existence or amount of his underlying tax liability only if he did not receive a notice of deficiency for the tax year in question or otherwise have a prior opportunity to dispute it." *Kupersmit v. Comm'r*, 108 T.C.M. (CCH) 593, 2014 WL 6994816, at *11 (2014) (citing 26 U.S.C. § 6330(c)(2)(B)).

The Tax Court specifically dealt with this issue in *Roudakov v. Commissioner*, 113 T.C.M. (CCH) 1537, 2017 WL 2651995 (2017). In that case, the taxpayer received a notice of deficiency and subsequently litigated before the Tax Court the deficiency amount and fraud penalties for the years 1995 to 1997. *Id.* at *2. The IRS then assessed the amounts of the redetermined deficiencies and penalties along with applicable interest. *Id.* at *3. Upon receipt of the final assessment, the taxpayer requested a hearing and challenged the underlying liability for the 1995 year. *Id*. at *4. The Tax Court found that res judicata prevented the taxpayer from challenging the underlying tax liability because the parties were bound not only on matters actually litigated in the prior action but also "any other admissible matter which might have been offered for that purpose." *Id.* at *6-7 (internal quotation marks omitted) (citation omitted).

In *Roudakov*, the issue of the taxpayer's underlying tax liability was never actually litigated, but the doctrine of res judicata applied because the taxpayer could have raised the issue as part of the Tax Court case litigating the deficiency amount for those tax years. *Id.* at *6. Just as in the present case, *Roudakov* litigated the deficiency amount and the civil penalties, but failed to raise the issue of his underlying tax liability due to the allegedly incorrect tax returns. In this forum, Defendant now seeks to challenge his underlying tax liability, which should have been raised in the earlier Tax Court case.

Defendant contends that the 2019 assessment was based on different information than the deficiency and civil penalties and therefore constitutes a separate cause of action. (Def.'s Resp.

9

Pl.'s Mot. Summ. J. 21). The 2019 assessment, however, made no substantive changes to Defendant's tax liability from the 2007 and 2011 assessments except to incorporate the negotiated figure agreed upon by Defendant and the IRS in the Stipulation of Settled Issues. (Form 4340s, at 21-22).

A contention by Defendant was that the 2019 assessment was calculated incorrectly based on the 2007 assessment, the 2011 assessment and the Stipulation would not be barred by res judicata because it would constitute a new calculation. However, Defendant's issue is that the underlying assessments (i.e., for 2007, 2011, and the Stipulation) are incorrect, not the recalculation. (Def.'s Resp. Pl.'s Mot. Summ. J. 23-24). Defendant had ample opportunity to raise issues with the 2007 and 2011 assessments and the underlying tax liability as determined in the 2014 Tax Court case. In fact, the only reason for the IRS' 2019 assessment was to reflect changes Defendant and IRS agreed upon in the Tax Court proceeding, which **lowered** Defendant's underlying tax liability. (Stipulation 1-2; Form 4340s, at 21-22). Having had some success in the Tax Court action, Defendant here is seeking another bite at the apple. This he cannot do because those issues have been finally resolved.

        **c.    Defendant had a full and fair opportunity to litigate his underlying tax liability.**

Defendant also contends that he did not receive a "full and fair" opportunity to challenge the underlying liabilities in Tax Court. (Def.'s Resp. Pl.'s Mot. Summ. J. 10). An exception to res judicata is that it should not be applied when the party against whom it is asserted did not have a full and fair opportunity to litigate. *Johnson v. Spencer*, 950 F.3d 680, 693 (10th Cir. 2020). A party has a full and fair opportunity to litigate when: (i) there are no procedural limitations impacting the party's ability to raise a claim; (ii) the party has an "incentive to fully litigate the claim"; and (iii) the party's ability to assert the claim is not limited "by the nature or relationship

of the parties." *Id.* at 709 (citation omitted). In arguing that the exception applies, Defendant contends that: (i) the Tax Court did not have jurisdiction which is a procedural limitation; (ii) he did not know about the underlying tax liabilities and therefore did not have incentive to litigate; and (iii) he represented himself pro se and was unaware the IRS agreement would subject him to tax liabilities "beyond what he agreed to." (Def.'s Resp. Pl.'s Mot. Summ. J. 19-20).

All of these full and fair opportunity requirements are met in this case and the exception is inapplicable. First, Defendant argues that the Tax Court not having jurisdiction to hear the claims regarding the underlying liability constitutes a "procedural limitation." As discussed above, however, not only did the Tax Court have jurisdiction to determine the underlying liability, Defendant actually did litigate and argue for changes that were then made to his underlying tax liability. Second, Defendant contends that since he did not receive proper notice about the 2007 and 2011 assessments, he could not have had an incentive to litigate them, but he did in fact litigate them. Third, Defendant argues that because he signed the stipulation pro se and was unaware he would be subjected to further tax liability he did not have a full and fair opportunity to litigate, but Defendant representing himself pro se does not mean he did not have an opportunity to litigate the issues he now seeks to raise.

Likewise, there are factual circumstances that indicate that Defendant had a full and fair opportunity to address his underlying tax liability in the Tax Court case. First, despite Defendant's arguments, the underlying tax amounts were listed in the Notice of Deficiency. (Notice of Deficiency 4, 7, 9). While Defendant argues that he was unaware that the Stipulation he agreed to could lead to "more taxes required by the Tax Court," the underlying tax liability is labeled as "total underpayment" **on the Notice of Deficiency**. (Def.'s Resp. Pl.'s Mot. Summ. J.

2; Notice of Deficiency 4, 7, 9). Defendant cannot now claim that he was unaware the IRS would try to collect this amount.

Additionally, in the Stipulation, substantive concessions were made by the IRS regarding Defendant's underlying tax liability. (Stipulation 1-2). The civil fraud penalties that were litigated in the Tax Court case were a function of the underlying tax liability. Thus, a lower tax liability resulted in a corresponding reduction in civil penalties. (Stipulation 1-2). Defendant was certainly not denied the opportunity to litigate the underlying tax liability when he negotiated a stipulated settlement with the IRS. (Stipulation 1-2). Any other issues Defendant had with the underlying tax liability for those years must necessarily have been resolved as part of that negotiation.

For these reasons, Defendant is precluded from challenging his tax liability due to the doctrine of res judicata. The Court will grant Plaintiff's summary judgment motion.

### B. Merits

Even if Defendant were not barred from contesting the 2007 and 2011 assessments, he has not overcome the prima facie tax liability established by the IRS. Assessments made by the IRS are "entitled to a legal presumption of correctness" and establish a prima facie case of tax liability. *United States v. Fiore D'Italia*, 536 U.S. 238, 242 (2002). "Once the United States introduces proof of an assessment, the burden shifts to the taxpayer to disprove liability." *United States v. Gilbert*, No. 3:12-CV-235-H, 2014 WL 894483, at *2 (W.D. Ky. Jan. 13, 2014) (citation omitted). "A certified record of assessment constitutes presumptive proof of the taxpayer's liability, establishes the government's prima facie case, and shifts the burden to the taxpayer." *Id.* (citation omitted). Form 4340s are offered to establish that assessments have been made and that those assessments were properly conducted under 26 U.S.C. § 6203.

For a Form 4340 to be valid proof of an assessment it must: (i) identify the taxpayer; (ii) the character of the liability; (iii) the taxable period; and (iv) the amount of the assessment. *Gentry v. United States*, 962 F.2d 555, 557 (6th Cir. 1992). Here, Plaintiff produced Form 4340s and Account Transcripts for each of the years at issue and therefore has established a prima facie case of tax liability. (Form 4340s, at 1-25). This shifts the burden of proof to Defendant. *See Gilbert*, 2014 WL 894483, at *3.

Likewise, "because the amount of interest is a matter of law, not of evidence, the Government does not have to assert or prove the amount of interest at trial." *United States v. Hammon*, 277 F. App'x 560, 569 (6th Cir. 2008) (citations omitted). In this case, Defendant's interest has been accruing and will continue to accrue until tax liabilities are paid in full. (Pl.'s Mem. Supp. Mot. Summ. J. 9); 26 U.S.C. § 6601(a), (b); 26 U.S.C. § 6621(a). Similarly, Defendant's penalties have already accrued to the statutory maximum. (Pl.'s Mem. Supp. Mot. Summ. J. 6); 26 U.S.C. § 6651(a)(1), (2); 26 U.S.C. § 6654. Since these amounts are determined as a matter of law, Plaintiff does not have to prove these amounts to be entitled to summary judgment.

To overcome the presumption of accuracy of the IRS' assessment, Defendant contends that there is reason to doubt the 2007 and 2011 assessments upon which Defendant's underlying tax liability is based. (Def.'s Resp. Pl.'s Mot. Summ. J. 23-24). Specifically, Defendant points to a recorded conversation between himself and an IRS employee in which they discuss that the 2011 assessment was based on tax returns not filed by Defendant. (Def.'s Resp. Pl.'s Mot. Summ. J. 23-24; Def.'s Resp. Pl.'s Mot. Summ. J. Ex. 1, at 2-10, DN 57-1). Defendant alleges that this sort of uncertainty creates a material issue of fact, which precludes summary judgment.

In *Magee v. Commissioner*, 90 T.C.M. (CCH) 489, 2005 WL 3068351 (2005), the Tax Court found that when the plaintiff simply claimed that the return at issue "contained false or fraudulent information" without specifically addressing or identifying "any items of income, deduction, or credit or any calculations that are incorrect", she was not able to overcome the presumption of accuracy. *Id*. Likewise, when the plaintiff argued that the signature on her tax return was fraudulent the Tax Court pointed out "this contention does not invalidate the joint return, and it also does not place the validity of the underlying liability at issue." *Id*.

Here, Defendant's allegations are not enough to overcome the presumption of tax liability established by Plaintiff. Accordingly, Plaintiff is entitled to summary judgment.

## V.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Summary (DN 37) is **GRANTED**, and the United States of America is entitled to judgment against Defendant Curtis Gordon, Jr. in the amount of $324,057.87, as of October 21, 2019, for federal income taxes, fraud penalties, and statutory additions to tax for the 2003 through 2005 tax years, plus statutory interest that will continue to accrue thereafter according to law.

2. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

September 27, 2021

cc:    counsel of record